AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| MICHAEL DENIS, | ) | 20-6368-SNOW |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 7, 2020 to June 25, 2020__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

*Brandon J. Wiltz*
Complainant's signature

Brandon Wiltz, Special Agent, U.S. Secret Service
*Printed name and title*

Sworn to and subscribed before me telephonically.

Date: August 18, 2020

*Lurana S. Snow*
Judge's signature

City and state: Fort Lauderdale, Florida

Lurana S. Snow, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brandon Wiltz, being first duly sworn, state:

### AGENT BACKGROUND AND INTRODUCTION

1. I am a Special Agent with the United States Secret Service ("USSS") and have been so employed since June 19, 2017. I am currently assigned to the South Florida Organized Fraud Task Force ("SOFTF"), comprised of multiple federal, state, and local agencies of which investigates bank fraud, wire fraud, access device fraud, identity theft, fraud of federally sponsored programs, and unauthorized use of other persons' information for financial gain. I have approximately 6 years of law enforcement experience. As a law enforcement officer, I have received training in the investigation of identity theft, wire and mail fraud, internet crimes, counterfeiting currency, trafficking of illicit materials, counterfeit and unauthorized access devices, threats, assaults, and money laundering. I have also participated in numerous criminal investigations of various fraud schemes related to corporate fraud, financial fraud, identity theft, money laundering, tax fraud, and wire fraud.

2. This affidavit is made in support of a criminal complaint charging Michael Denis ("DENIS") with federal crimes of bank fraud, in violation of Title 18, United States Code, Section 1344 and wire fraud, in violation of Title 18, United States Code, Section 1343.

3. This Affidavit is based on my personal investigation and investigation by others, including federal and local law enforcement officials whom I know to be reliable and trustworthy. The facts contained herein have been obtained by interviewing witnesses and examining documents obtained in the course of the investigation as well as through other means. This Affidavit does not include every fact known to me about this investigation, but rather only those

facts sufficient to establish probable cause.[1]

## PROBABLE CAUSE

### *Overview of the Paycheck Protection Program*

4.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted March 27, 2020 to provide financial assistance to Americans suffering economic harms from the COVID-19 pandemic. One source of relief provided through the CARES Act is the authorization of forgivable loans to businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP").

5.  The types of businesses eligible for a PPP loan under the CARES Act include individuals who operated under a sole proprietorship business structure. For the period from February 15, 2020 through June 30, 2020, such individuals were eligible to receive a maximum PPP loan of up to $20,833 to cover lost compensation or income from the sole proprietorship. In order to be eligible to receive such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service ("IRS") on Form 1040, Schedule C, for a given tax year. The lending institution used these reports and documents to calculate the amount of money the individual was entitled to receive under the PPP.

6.  A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are fully guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of

---

[1] The conduct and charges described in this affidavit are part of a larger investigation that is being conducted in this District and elsewhere. As a result, not all numbered sources and anonymous individuals and entities are described in every filing. I have included in this affidavit only those individuals and entities I have deemed necessary to explain the particular facts set forth here.

2

employees, is transmitted by the lender to the SBA in the course of processing the loan.

7. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

### *Overview of the Scheme to Submit Fraudulent PPP Loan Applications*

8. DENIS participated in a scheme to obtain by fraud, hundreds of thousands of dollars in forgivable loans through the Paycheck Protection Program ("PPP"). DENIS planned and prepared several fraudulent PPP loan applications for other companies by recruiting confederate loan applicants to receive kickbacks from those confederates. To inflate the size of these PPP loans and the corresponding kickbacks, DENIS relied on a variety of false statements, including by submitting falsified bank statements and tax forms. For example, many of the companies were created the same week of the loan application, and never had any bank statements or tax documentation. A number of these loans were approved and funded by financial institutions, and certain proceeds were given to DENIS in the form of cash kickbacks.

9. DENIS planned and prepared at least sixteen (16) fraudulent applications, which were submitted to a participating lender. Based on the evidence investigators have reviewed to date, DENIS planned and prepared applications for funded PPP loans that are worth more than $1,000,000 dollars. Some of those loan recipients then paid a kickback of varying amounts, often approximately 20-30% of the fraudulent loan proceeds, in cash directly to DENIS.

### *Background of DENIS and Related Individuals and Entities*

10. Sometime in June 2020, a confidential human source[2] ("CHS1") met law enforcement regarding an ongoing scheme to defraud the United States government using the PPP loan program. CHS1 told law enforcement that the scheme to defraud involves a business named Loyalty Mortgage & Investments LLC, which advertises that it provides mortgage, income tax, insurance, public notary, credit repair, and immigration services. Law enforcement determined that Loyalty Mortgage & Investments LLC (the "Business Premises") is an active Florida limited liability company, and the registered LLC managers are J.G. and B.T.D.

11. CHS1, through phone conversations and text messages with D.H.D., an employee at the Business Premises, stated that J.G., B.T.D., and D.H.D. were actively involved in fraudulent applications for PPP loans. Upon further investigation, law enforcement determined that J.G., B.T.D. and D.H.D. are family members of DENIS and that they all work at the Business Premises. CHS1 added that D.H.D. encouraged multiple people to participate in this scheme to defraud for their own benefit by activating an account with Bank Processor A[3]. Once an account is created by a prospective applicant, the information is forwarded to either J.G., B.T.D., and D.H.D. The prospective applicant would also have to send additional personal identifying information ("PII"), including: (1) the back and front of a driver's license; (2) a copy of a social security card; and (3) a copy of a February 2020 bank statement. Once the required information was received, a contract would be prepared with an agreement that the preparer would receive 30% of the loan amount.

12. CHS1 further stated that the business produced forged IRS tax documents, such as W2's and fee schedules. This would serve to convince a lending institution that the application

---

[2] Most of the confidential human source's statements related herein have been corroborated by records obtained from third parties or recovered from the CHS1's electronic devices.
[3] Bank Processor A was a financial technology company located in Redwood City, California, that enabled businesses to apply online for PPP loans.

4

submitted is from a legitimate business.

13. CHS1 provided me with screenshots of loan qualification amounts from Bank Processor A, which were fraudulent loans for fictitious business entities. These screenshots of qualification notices from Bank Processor A were sent to the CHS1 to prove that the fraudulent applications do work. The aggregate amount provided by CHS1 from the screenshots is $800,684.00.

14. On Thursday, June 25, 2020, a search warrant signed by a State of Florida Circuit Court Judge was executed at Business Premises, located in Broward County, Florida where multiple computers were taken along with documents related to the business operations. During the execution of the state search warrant, law enforcement observed a workstation with a computer that displayed a list of prospective PPP applicants with their PII, including addresses, social security numbers, contact numbers, and estimated approval amounts on its screen. At least sixteen (16) individuals' PII was on this computer screen.

15. This computer and workstation were identified by J.G. and B.T.D., as belonging to DENIS. J.G. and B.T.D., the owners of the business, confirmed that DENIS worked at the business. Also located at DENIS's workstation was a printout of the PII that was on the computer screen, as well as hand-written notations next to certain names, and whether their loans had been approved.

### *Interviews of PPP Loan Recipients Confirm Loans Were Fraudulent and DENIS is a Knowing Participant in the Fraud*

16. After obtaining the sixteen (16) individuals' PII from DENIS's workstation, I was able to interview them all. These individuals stated they either met with DENIS or spoke with him and provided DENIS with their PII for him to process their loan applications. For those who were approved, the recipients stated DENIS requested a "kickback" of 20% to 30% of the approved loan

amount. DENIS requested these kickback payments to be made to him in cash. The recipients stated they did not know what business income or tax information DENIS submitted for their loan.[4]

17. The sixteen (16) individuals whose PII was on the computer screen at DENIS's workstation and on the documents at DENIS's workstation confirmed they only provided DENIS the PII that was found at the workstation. Of the sixteen (16) individuals I interviewed, I was able to review documentation related to three (3) individuals who received PPP Loans ("Recipient 1," "Recipient 2," and "Recipient 3").

18. All three loans were funded by Bank A. Bank A was a federally insured[5] financial institution located in Salt Lake City, Utah. Bank A was a participating lender in SBA's PPP, authorized to lend funds to eligible borrowers under the terms of the PPP. Bank A offered customers in Florida the ability to apply for and receive PPP loans electronically through Bank Processor A.

19. Bank A approved and deposited the three PPP loans into three separate personal bank accounts held by Recipient 1, Recipient 2, and Recipient 3:

   a. Bank B records showed that Recipient 1 held an account at Bank B in her name. Bank B was a federally insured bank located in Charlotte, North Carolina.

   b. Bank C records showed that Recipient 2 held an account at Bank C in her name. Bank C was a federally insured bank located in Cherry Hill, New Jersey.

   c. Bank D records showed that Recipient 3 held an account at Bank D in her name. Bank D was a federally insured bank located in McLean, Virginia.

---

[4] The PPP Loan Program uses Tax Returns (via IRS forms) to determine the total amount of money loaned.
[5] The meaning of the term "federally insured" as used in this Affidavit is that the entity had deposits insured by the Federal Deposit Insurance Corporation.

20. After reviewing the documentation for Recipient 1, Recipient 2, and Recipient 3's PPP loans, the loans were funded as follows:

| Approximate Application Date | Claimed Loan Recipient | Amount Funded | Approximate Wire Date | Deposit Account Bank |
|---|---|---|---|---|
| June 7, 2020 | Recipient 1 | $19,682.00 | June 9, 2020 | Bank B |
| June 20, 2020 | Recipient 2 | $19,997.00 | June 22, 2020 | Bank C |
| June 23, 2020 | Recipient 3 | $19,672.00 | June 25, 2020 | Bank D |
| | Total: | $59,351.00 | | |

21. Each of the three loan recipients stated they knew DENIS prior to their contact with him in June 2020. They confirmed that they gave their PII to DENIS, and shortly thereafter, they received a PPP Loan payment into their personal bank account. They also stated that they paid DENIS a kickback in the form of cash. Recipient 1's name was on the computer screen and documents located at DENIS's workstation with the notation "$19,682.00 – sent," which is the amount of the PPP Loan that was received by Recipient 1 on June 9, 2020. Recipient 2 and 3's name, date of birth, social security number, and contact information were also on the computer screen and documents located at DENIS's workstation.

22. On August 13, 2020, Recipient 1 was interviewed by law enforcement. Recipient 1 stated she was self-employed and made around $1,000.00 in 2019. Sometime in early June 2020, Recipient 1 stated she met with DENIS and provided him with a copy of her driver's license, social security card, February 2020 bank statement, and a blank signed check from her personal bank account in order to obtain a loan. Recipient 1 stated she did not provide DENIS with any IRS tax documents. As required for a PPP loan, Recipient 1 never provided DENIS with a copy of her Form 1040 Schedule C. Recipient 1 did not submit any PPP Loan application herself. On June 9, 2020, Recipient 1 received a deposit from Bank A in the amount of $19,682.00 into her Bank B

7

account. Shortly thereafter, DENIS requested Recipient 1 to pay him a $4,000.00 cash kickback for processing her loan and Recipient 1 paid DENIS $4,000.00 cash. Recipient 1 stated she never signed any paperwork related to this PPP loan, and did not know this loan was part of the PPP loan program. Recipient 1 stated she did not give DENIS authorization to sign her name on any documents.

23. On August 12, 2020, Recipient 2 was interviewed by law enforcement. Recipient 2 stated she was employed at a family homecare business, located in Davie, Florida and was paid about $15,000.00 in 2019. Sometime in early June 2020, Recipient 2 stated she provided DENIS with a copy of her driver's license, social security card, February 2020 bank statement, and a blank signed check from her personal bank account in order to obtain a loan. Recipient 2 stated she did not provide DENIS with any IRS tax documents. As required for a PPP loan, Recipient 2 never provided DENIS with a copy of a Form 1040 Schedule C. At the time of the application, Recipient 2 did not own any businesses. Recipient 2 created an account with Bank Processor A and provided that information to DENIS. On June 20, 2020, Recipient 2 received an e-mail from Bank Processor A that her PPP loan application had been successfully submitted, although she did not submit any application herself. On June 22, 2020, Recipient 2 received a deposit from Bank A in the amount of $19,977.00 in her Bank C account. Shortly thereafter, DENIS requested Recipient 2 to pay him a $3,000.00 cash kickback for processing her fraudulent loan, and Recipient 2 paid DENIS $3,000.00 cash. Recipient 2 stated she never signed any paperwork related to this PPP loan, and did not know this loan was part of the PPP loan program. Recipient 2 stated she did not give DENIS authorization to sign her name on any documents.

24. On August 11, 2020, Recipient 3 was interviewed by law enforcement. Recipient 3 stated she was a self-employed and made around $15,000.00 in 2019. Sometime in early June

2020, Recipient 3 stated she provided DENIS with a copy of her driver's license, social security card, February 2020 bank statement, and a blank signed check from her personal bank account in order to obtain a loan. Recipient 3 stated she did not provide DENIS with any IRS tax documents. As required for a PPP loan, Recipient 3 never provided DENIS with a copy of a Form 1040 Schedule C. Recipient 3 created an account with Bank Processor A and provided that information to DENIS. On June 23, 2020, Recipient 3 received an e-mail from Bank Processor A that her PPP loan application had been successfully submitted, although she did not submit any application herself. On June 25, 2020, Recipient 3 received a deposit from Bank A in the amount of $19,672.00 in her Bank D account. DENIS requested Recipient 3 to pay him a $3,000.00 cash kickback for processing her fraudulent loan, and Recipient 3 paid DENIS $3,000.00 cash. Recipient 3 stated she never signed any paperwork related to this PPP loan, and did not know this loan was part of the PPP loan program. Recipient 3 stated she did not give DENIS authorization to sign her name on any documents.

### *Conclusion*

25.     Based on my training and experience, and the information provided in this Affidavit, I respectfully submit that there is probable cause to believe that:

- On or about June 7, 2020, in the Southern District of Florida and elsewhere, the defendant, MICHAEL DENIS, did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud a financial institution, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain moneys and funds owned by, and under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank A to deposit $19,682.00 into an account controlled by Recipient 1, in violation of Title 18, United States Code, Section 1344 and 2.

- On or about June 20, 2020, in the Southern District of Florida and elsewhere, the defendant, MICHAEL DENIS, did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud

a financial institution, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain moneys and funds owned by, and under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank A to deposit $19,997.00 into the Bank C account controlled by Recipient 2, in violation of Title 18, United States Code, Section 1344 and 2.

- On or about June 23, 2020, in the Southern District of Florida and elsewhere, the defendant, MICHAEL DENIS, did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud a financial institution, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to obtain moneys and funds owned by, and under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank A to deposit $19,672.00 into the Bank D account controlled by Recipient 3, in violation of Title 18, United States Code, Section 1344 and 2.

- On or about June 9, 2020, in the Southern District of Florida and elsewhere, MICHAEL DENIS, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit: DENIS engaged in a scheme to obtain hundreds of thousands of dollars in forgivable loans through the PPP by planning or preparing a number of fraudulent PPP loan applications for other companies by recruiting confederate loan applicants, in order to receive kickbacks from those confederates by means of false and fraudulent pretenses, representations, and documents transmitted into and out of the Southern District of Florida, which caused a wire transfer in the amount of $19,682.00 from Bank A to the Bank B account belonging to Recipient 1, causing a wire transmission into and out of the Southern District of Florida, in violation of Title 18, United States Code, Sections 1343 and 2.

- On or about June 22, 2020, in the Southern District of Florida and elsewhere, MICHAEL DENIS, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit: DENIS engaged in a scheme to obtain hundreds of thousands of dollars in forgivable loans through the PPP by planning or preparing a number of fraudulent PPP loan applications for other companies by recruiting confederate loan

applicants, in order to receive kickbacks from those confederates by means of false and fraudulent pretenses, representations, and documents transmitted into and out of the Southern District of Florida, which caused a wire transfer in the amount of $19,997.00 from Bank A to the Bank C account belonging to Recipient 2, causing a wire transmission into and out of the Southern District of Florida, in violation of Title 18, United States Code, Sections 1343 and 2.

- On or about June 25, 2020, in the Southern District of Florida and elsewhere, MICHAEL DENIS, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit: DENIS engaged in a scheme to obtain hundreds of thousands of dollars in forgivable loans through the PPP by planning or preparing a number of fraudulent PPP loan applications for other companies by recruiting confederate loan applicants, in order to receive kickbacks from those confederates by means of false and fraudulent pretenses, representations, and documents transmitted into and out of the Southern District of Florida, which caused a wire transfer in the amount of $19,672.00 from Bank A to the Bank D account belonging to Recipient 3, causing a wire transmission into and out of the Southern District of Florida, in violation of Title 18, United States Code, Sections 1343 and 2.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

*Brandon J. Wiltz*
Special Agent Brandon Wiltz
United States Secret Service

Sworn and subscribed before me telephonically this __18th__ day of August, 2020.

*Lurana S. Snow*
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-6368-SNOW

**UNITED STATES OF AMERICA**

v.

**MICHAEL DENIS**

        **Defendant.**

_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? \_\_Yes  X No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? \_\_Yes  X No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? \_\_Yes  X No

                Respectfully submitted,

                ARIANA FAJARDO ORSHAN
                UNITED STATES ATTORNEY

By: _____
       MANOLO REBOSO
       Assistant United States Attorney
       Florida Bar No. 75397
       99 Northeast 4th Street
       Miami, FL. 33132-2111
       Tel: (305) 961-9091
       Fax: (305) 536-4699
       E-Mail: Manolo.Reboso@usdoj.gov